## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUPANIN DISAYAWATHANA, Individually and On Behalf of All Others Similarly Situated,<br><br>                                Plaintiff,<br><br>          v.<br><br>FORTERRA, INC., JEFFREY BRADLEY, WILLIAM MATTHEW BROWN, LORI M. BROWNE, KYLE S. VOLLUZ, KEVIN BARNER, ROBERT CORCORAN, SAMUEL D. LOUGHLIN, CLINT MCDONNOUGH, JOHN MCPHERSON, CHRIS MEYER, JACQUES SARRAZIN, CHADWICK SUSS, GRANT WILBECK, GOLDMAN, SACHS & CO., CITIGROUP GLOBAL MARKETS INC. and CREDIT SUISSE SECURITIES (USA) LLC,<br><br>                                Defendants. | Case No.:<br><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Supanin Disayawathana ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Forterra, Inc., ("Forterra" or the "Company"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Forterra; and (c) review of other publicly available information concerning Forterra.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that: a) acquired Forterra common stock issued pursuant and/or traceable to the Company's false and/or misleading registration statement and prospectus (collectively, the "IPO Registration Statement") issued in connection with Forterra's October 21, 2016 initial public stock offering (the "IPO"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act"); and/or, b) acquired Forterra's securities between October 18, 2016 and August 14, 2017, inclusive (the "Class Period"), against the Defendants, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Forterra purportedly manufactures pipe and precast products in the U.S and Eastern Canada for water-related infrastructure applications, including water transmission, distribution and drainage.  The Company clams that it provides infrastructure components for construction projects in residential, non-residential, and infrastructure markets.

3.      On October 21, 2016, the Company filed its IPO prospectus with the SEC. Therein, the Company claimed that its organic growth strategy was focused on leveraging its low-cost operations, high level of customer service and product innovation capabilities, and its product breadth and industry-leading scale, to cross-sell its products to existing customers to increase penetration and project wins and to gain market share through new customers.  The Company also claimed that it had "built a strong operating platform" and that it was continuously evaluate acquisition opportunities "to complement [its] organic growth."

4. On or around October 21, 2016, the Company priced its IPO of 18,420,000 shares, at a price of $18.00 per share.

5. On March 30, 2017, during the Company's fourth quarter 2016 conference call, Defendant Jeffrey Bradley, the Chief Executive Officer of Forterra, discussed "key top-line organic growth initiatives" that the Company purportedly put in place in 2016. The initiatives included the creation of a "strategic accounts team that focuses on developing and expanding [Forterra's] relationships with large national engineering procurement and construction firms," a "cross-selling initiative that is focused on expanding the sales of [the Company's] drainage pipe and products to distributors in areas of the country where [Forterra] did not have a strong presence," and significantly growing Forterra's Bio Clean business.

6. On May 15, 2017, the Company issued a press release disclosing that it produced no organic growth for the first quarter of 2017. Specifically, the Company stated that net sales for the quarter increased to $338.3 million, compared to $187.0 million in the prior year quarter, but that the sales growth was attributable to the impact of acquisitions that increased net sales by $163.0 million. The Company further stated that it was continuing to work on its previously announced initiatives to improve income from operations, and that the Company expects the initiatives to require significant investment, including professional fees. The Company also stated that it expects some of the benefits of the initiatives to begin to contribute to improved performance starting in the second half of 2017.

7. On this news, the Company's stock price fell $4.79 per share, or 24.2%, to close at $14.93 per share on May 15, 2017, on unusually heavy trading volume.

8. On August 10, 2017, the Company again issued a press release disclosing that it produced no organic growth, this time for the second quarter of 2017. Specifically, the Company stated that net sales for the quarter increased to $436.7 million, compared to $381.7 million in the prior year quarter, but that the sales growth was attributable to the impact of acquisitions that contributed $56.1 million to net sales. The Company claimed that net sales were negatively impacted by Tropical Storm Cindy, excessive rainfall events around the country, unanticipated competitive pricing pressure in certain areas, and a decline in average sales prices of products

sold.

9.    On this news, the Company's stock price fell approximately 55%, on August 10, 2017, on unusually heavy trading volume.

10.   Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that the Company's initiatives were not producing organic growth; (2) that, as such, the Company was not likely to experience organic growth; (3) that the Company was experiencing increased pricing pressures, operational problems at is plants, and rising bad debt expenses; (4) that the Company had material weaknesses in internal controls over inventory accounting; (5) that, as a result of the foregoing, Defendants' statements about Forterra's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

11.   As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12.   The claims asserted herein arise under Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

14.   Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's shares are traded in this Judicial District.

15.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

16.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Forterra securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

17.     Defendant Forterra, Inc. is incorporated in Delaware and its headquarters are in Irving, Texas.  Forterra's common stock trades on the NASDAQ Stock Market ("NASDAQ") under the symbol "FRTA."

18.     Defendant Jeffrey Bradley ("Bradley") was the Chief Executive officer ("CEO") of Forterra at all relevant times.

19.     Defendant William Matthew Brown ("Brown") was the Chief Financial officer ("CFO") of Forterra at all relevant times.

20.     Defendant Lori M. Browne (Browne") is, and was at the time of the IPO, a Senior Vice President and the General Counsel of Forterra.

21.     Defendants Kevin Barner, Robert Corcoran, Samuel D. Loughlin, Clint McDonnough, John McPherson, Chris Meyer, Jacques Sarrazin, Chadwick Suss and Grant Wilbeck were all identified as "Director Nominees" in the Registration Statement. Along with defendants Bradley, Brown and Browne, they are referred to herein as the "Individual Defendants."

22.     Defendant Goldman, Sachs & Co. ("Goldman"), Citigroup Global Markets, Inc. ("Citigroup") and Credit Suisse Securities (USA) LLC ("Credit Suisse") served as underwriters for the Company's IPO.

23.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Forterra's reports to the SEC, press

releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.   The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.   Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.   The Individual Defendants are liable for the false statements pleaded herein.

24.     Goldman, Citigroup and Credit Suisse (collectively, the "Underwriter Defendants"), are investment banking houses that served as underwriters of the IPO and collectively earned over $18 million in fees.

25.     The Underwriter Defendants, through their representatives merchandized the Company's shares to buyers, and purportedly conducted adequate due diligence to ensure that Forterra's statements in the IPO Registration Statement were accurate. And, the Underwriter Defendants caused the Registration Statement to be filed with the SEC.

## SUBSTANTIVE ALLEGATIONS

### Background

26.     Forterra purportedly manufactures pipe and precast products in the U.S and Eastern Canada for water-related infrastructure applications, including water transmission, distribution and drainage.   The Company clams that it provides infrastructure components for construction projects in residential, non-residential, and infrastructure markets.

### Materially False and Misleading
### Statements Issued During the Class Period

27.     On October 19, 2016, the SEC declared effective the Form S-1 that Forterra filed on July 8, 2016 and repeatedly amended, until on or about October 17, 2016, when the Company filed with the SEC the final Form S-1/A (collectively, the "Registration Statement") for the IPO.

28.     In the Registration Statement, the Company made various claims about its organic

growth.  In relevant part, the Company stated:

> Our organic growth strategy is focused on leveraging our low-cost operations, high level of customer service and product innovation capabilities, as well as our product breadth and industry-leading scale, to cross-sell our products to existing customers to increase penetration and project wins and to gain market share through new customers. Operationally, we continue to focus on efficiency and productivity improvements to reduce costs and drive margin improvements.
>
> We have built a strong operating platform and continuously evaluate acquisition opportunities to complement our organic growth and improve our market positions within the markets we serve. Over the past three years, seven strategic acquisitions (including three acquisitions completed by U.S. Pipe) have provided meaningful, ongoing synergy benefits. We believe that our success in acquiring businesses has been the result of our highly disciplined approach, continuous monitoring of potential targets (with a focus on culture and people, among other things), and a market view that Forterra is a strong partner given our scale, culture and recent growth. We believe significant acquisition opportunities at attractive prices are still available given the relatively fragmented landscape in several of the sub-markets in which we operate.

29.     On November 10, 2016, the Company issued a press release entitled "Forterra Reports Strong Third Quarter 2016."  Therein, the Company, in relevant part, stated:

> Irving, TX – GLOBE NEWSWIRE – November 10, 2016 — Forterra, Inc. ("Forterra" or "the Company") (NASDAQ: FRTA), a leading manufacturer of water infrastructure pipe and products in the United States and Eastern Canada, today announced results for the third quarter ended September 30, 2016.
>
> Forterra CEO Jeff Bradley commented, "We are pleased with the strong results in our first quarter reporting as a public company. The growth in net sales, net income and adjusted EBITDA was fueled by the performance of our accretive acquisitions and the strength of our leadership position across our national footprint. We remain optimistic about the substantial opportunities that lie ahead as we expect federal and state spending for water infrastructure to continue to increase."
>
> Bradley continued, "After the completion of our initial public offering and debt refinancing in October 2016, we strengthened our balance sheet. As a result, we believe we are now even better able to offer our customers a comprehensive end-to-end product line."
>
> **Third Quarter 2016 Financial Results**
>
> Net sales for third quarter 2016 increased by 98.9% to $480.1 million, compared to $241.4 million in the prior year quarter. The increase is attributable to the impact of acquisitions which increased net sales by $268.3 million. Drainage Pipe & Products net sales increased by 50.6% to $215.5 million, compared to $143.1

million in the prior year quarter due to $83.5 million of net sales from acquisitions. Water Pipe & Products net sales increased by 293.0% to $225.6 million, compared to $57.4 million in the prior year quarter, due to net sales from our acquisitions of $184.8 million. Drainage Pipe & Products gross profit increased to $52.7 million from $31.1 million in the prior year quarter, increasing gross profit margin by approximately 270 basis points. Water Pipe & Products gross profit increased to $49.4 million from $11.3 million, increasing gross profit margin by 220 basis points.

Reported net income for third quarter 2016 was $8.4 million, compared to a net loss of $15.0 million in the prior year quarter. The increase in net income of $23.4 million is primarily attributed to higher net sales. Adjusted net income[1] increased to $13.0 million, compared to an adjusted net loss[1] of $7.0 million in the prior year quarter, again mainly attributable to higher net sales.

Adjusted EBITDA for third quarter 2016 increased by $63.4 million to $86.3 million, compared to $22.9 million in the prior year quarter. Gross margin improved by 390 basis points to 22.7% as a result of cost saving initiatives and the ongoing realization of synergies from acquisitions. Adjusted EBITDA margin[1] improved by 850 basis points to 18.0%, compared to 9.5% in the prior year quarter. The increase in adjusted EBITDA[1] is attributable to higher net sales, the 390 basis point expansion in gross margin to 22.7%, and favorable leverage on selling, general & administrative expenses, which improved by 490 basis points to 13.8% as a percent of net sales, compared to the prior year quarter.

Drainage Pipe & Products EBITDA[2] and adjusted EBITDA[1] increased to $51.5 million and to $51.8 million, respectively, compared to $29.2 million and $33.8 million in the prior year quarter, respectively. Water Pipe & Products EBITDA[2] and adjusted EBITDA[1] increased by $35.0 million and by $31.8 million to $43.6 million and $43.1 million, respectively, compared to $8.6 million and $11.3 million, in the prior year quarter, respectively.

30.    On March 29, 2017, the Company issued a press release entitled "Forterra Announces Its Fourth Quarter and Full Year 2016 Results." Therein, the Company, in relevant part, stated:

### Fourth Quarter 2016 Highlights

- Net sales increased to $354.1 million
- Gross margin expanded to 17.0%
- Net loss increased to $48.7 million
- Adjusted EBITDA increased to $42.6 million
- Adjusted EBITDA Margin[1] expanded to 12.0%

### Full Year 2016 Highlights

- Net sales increased to $1,364.0 million

- Gross margin expanded to 20.6%
- Net loss narrowed to $7.6 million
- Adjusted EBITDA[1] increased to $218.0 million
- Adjusted EBITDA Margin[1] expanded to 16.0%

Irving, TX - GLOBE NEWSWIRE - March 29, 2017 -- Forterra, Inc. ("Forterra" or "the Company") (NASDAQ: FRTA), a leading manufacturer of water and drainage infrastructure pipe and products in the United States and Eastern Canada, today announced results for 2016 and the quarter ended December 31, 2016.

Forterra CEO Jeff Bradley commented, "We are pleased with the significant accomplishments we made in 2016 that laid the foundation for further growth and margin expansion. Accretive acquisitions expanded our geographic scope, increased our market share in key growth regions, enhanced the breadth of our product offerings, added an innovative and fast-growing stormwater treatment product line and enhanced our position as a market leader in water and drainage infrastructure pipe and products. The early results of our initiatives to drive margin expansion and lower costs are reflected in our results for the year."

Bradley continued, "Forterra is better positioned today to benefit from a favorable outlook across all three of our end markets than any time in the past. Our focus in 2017 is to execute on multiple initiatives that we expect to drive top-line growth, expand our margins and lower our costs."

31.     On March 30, 2017, the Company held its fourth quarter 2016 conference call. On the call, Defendant Bradley discussed "key top-line organic growth initiatives" that the Company purportedly put in place in 2016.  The initiatives included the creation of a "strategic accounts team that focuses on developing and expanding [Forterra's] relationships with large national engineering procurement and construction firms," a "cross-selling initiative that is focused on expanding the sales of [the Company's] drainage pipe and products to distributors in areas of the country where [Forterra] did not have a strong presence," and significantly growing Forterra Bio Clean business.  In greater part, Defendant Bradley stated:

Next, I want to highlight a few of the key top-line organic growth initiatives that we put in place in 2016 on slide six. We created strategic accounts team that focuses on developing and expanding our relationships with large national engineering procurement and construction firms. We're already seeing the bad debts.

We are tracking a number of multi-billion dollar industrial projects to be built in the petrochemical, power generation, and oil and gas industries that could generate tens of millions of dollars in revenue over the next few years. As I mentioned, we also launched the cross-selling initiative that is focused on

expanding the sales of our drainage pipe and products to distributors in areas of the country where we did not have a strong presence. We expect the cross-selling will generate meaningful net sales this year.

Our third organic growth initiative is to significantly grow our Bio Clean business. We have a growth plan in place, and we expect it will generate significant increases in earnings from these products over the next five years.

Also want to highlight the benefits from our focus on synergy, realization, and cost reduction initiatives, we realized over $30 million of cost savings and over $6 million in synergies last year. We believe this is just initial results of our cost savings efforts. In January this year, we hired Scott Leonard as our Chief Operating Officer, who will be spearheading a new range of cost reduction initiatives including procurement and lower SG&A.

Before I hand the call back over to Matt, I want to talk on our outlook for 2017 as compared to our top-line result for 2016. Our top-line performance for 2016 was impacted by several temporary factors. First of all, overall US residential home starts grew in 2016 as compared to 2015, some of the markets we serve although declined last year. Second one, the FAST Act bill was signed in late 2015, we did not see any activity until the latter part of last year. We are now seeing the spending accelerate. Our win rate for projects in Q1 of this year significantly increased over that of Q4 of last year and we expect this pace to continue.

Finally, significant rainfall level throughout certain areas of the country last year also caused a drag on our results. While our top-line performance was below our expectations for 2016, we believe that the combination of our end-market fundamentals, our growth initiatives, and our cost savings initiatives support our expectations for much better results in 2017.

And finally turning to slide seven, we have economic tailwinds across all three of our end-markets. In February, we saw the highest number of home starts in last eight years. And the market outlook suggests mid to high single-digit growth in home starts this year. Industry analysts predict mid to high single growth in construction spending on an average over the next three years as well.

32.     The call also contained an analyst question and answer portion.  In response to

certain questions, Defendant Bradley stated:

We're really excited about what we're seeing on the cross-selling initiatives. We have gotten off to very strong starts in the first quarter, really kick things off during the last year, but really things started kicking in the year, first quarter. Results are actually exceeding our expectations, results in terms of volume and also results in terms of the number of distributors that we are working with. So that's going very well.

*        *        *

Jerry -- Jerry, I was just going to -- I was just going to talk to you on the organic initiatives just may be a little deeper you had mentioned. I highlighted three in the comments, the strategic accounts, what we have done there, we've made a change, we've put, actually we see so much upside, here we actually put a stronger guy over top of that team and (inaudible) we're see tracking awful lot of work out there, cross selling is exceeding expectations, the Bio Clean business just continues to ramp. We will see that ramp as we go through the year, quarter by quarter.

And then an additional that I mentioned the new hire Scott, who is our COO, he has really gotten on top of procurement. We think there is a fair amount of money there. We talked about our SG&A being high, we're getting all over that. So we have a number of organic growth initiatives that are really going to drive the earnings as we go through that year.

*       *       *

Sure. So the Storm Water management rollout as I said, that's going to be the fastest growing part of the business. We really see a tremendous amount of growth there as we scale this business across the country.

What we are going to do with that business is we basically club this into the platform we have in place in our drainage business. This would predominantly be a West Coast business.

The guy that we bought it from, he said to me, this is really as far as I can take this thing. We are now scaling down across the country. We're getting business now in places as far away as Maine. We had a lot of success in the national area late last year and early this year. But we'll continue to scale that up and we'll use our existing drainage plants to not only produce the products but also using that existing sales force to market the products. We see an awful lot of upside there.

On the cross-selling, don't know how big that can be. It's actually trending larger than we thought it would be in the first quarter, really excited about that. I mean, you're talking about taking our drainage business and working with distributors across the country, big names like HD Supply that have many more facilities than we have.

We have aligned some of the big guys, but also some of the smaller local guys too. I think that's going to end up being larger than we had anticipated. I really don't want to put any numbers down now, but we're excited out that, strategic accounts I talked about. And again we'll continue to scale both these businesses across the country.

33.    The above statements identified in ¶¶28-32 were materially false and/or

misleading, as well as failed to disclose material adverse facts about the Company's business,

operations, and prospects.  Specifically, Defendants failed to disclose: (1) that the Company's

initiatives were not producing organic growth; (2) that, as such, the Company was not likely to experience organic growth; (3) that the Company was experiencing increased pricing pressures, operational problems at is plants, and rising bad debt expenses; (4) that the Company had material weaknesses in internal controls over inventory accounting; (5) that, as a result of the foregoing, Defendants' statements about Forterra's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

34.     On May 15, 2017, the Company issued a press release disclosing that it produced no organic growth for the first quarter of 2017.  Specifically, the Company stated that net sales for the quarter increased to $338.3 million, compared to $187.0 million in the prior year quarter, but that the sales growth was attributable to the impact of acquisitions that increased net sales by $163.0 million.  The Company further stated that it was continuing to work on its previously announced initiatives to improve income from operations, and that the Company expects the initiatives to require significant investment, including professional fees.  The Company also stated that it expects some of the benefits of the initiatives to begin to contribute to improved performance starting in the second half of 2017.  In greater part, the Company stated:

> IRVING, Texas, May 15, 2017 (GLOBE NEWSWIRE) -- Forterra, Inc. ("Forterra" or "the Company") (NASDAQ:FRTA), a leading manufacturer of water and drainage infrastructure pipe and products in the United States and Eastern Canada, today announced results for the quarter ended March 31, 2017.
>
> **First Quarter 2017 Results**
>
> First quarter 2017 net sales increased to $338.3 million, compared to $187.0 million in the prior year quarter. This sales growth is attributable to the impact of acquisitions that increased net sales by $163.0 million. Drainage Pipe & Products ("Drainage") net sales improved to $160.4 million, compared to $144.3 million in the prior year quarter, due to $20.1 million of net sales from acquisitions. The decline in net sales excluding acquisitions was due to a more typical winter in Q1 2017 and the impact of heavy rain and flooding in California compared to unseasonably warm weather in the northern regions in Q1 2016. Water Pipe & Products ("Water") net sales more than tripled to $177.8 million, compared to $40.5 million in the prior year quarter, due to net sales from our acquisition of U.S. Pipe of $142.9 million. Net sales excluding acquisitions was impacted by lower average sales prices as well as customer and weather related project delays in the concrete and steel pressure pipe portion of the Water business.

Drainage gross profit was $17.4 million compared to $30.5 million in the prior year quarter. Water gross profit increased to $22.2 million from $6.0 million. The key factors affecting gross profit for the two segments during the quarter are included in the discussion of EBITDA[1] and Adjusted EBITDA[1].

First quarter 2017 had a consolidated net loss of $22.5 million, or $(0.35) loss per share, compared to a net loss of $3.9 million in the prior year quarter, due to the impact of lower gross profit as a percentage of sales and higher SG&A costs as a percentage of sales. Adjusted net loss[1] was $19.7 million compared to Adjusted net income[1] of $1.0 million in the prior year quarter.

EBITDA[2] and Adjusted EBITDA[1] for the fourth quarter were $7.4 million and $11.9 million, respectively, compared to $15.9 million and $20.9 million, respectively, in the prior year quarter. The decline in Adjusted EBITDA[1] was attributable to lower adjusted EBITDA from the Drainage segment, partially offset by higher acquisition-driven Adjusted EBITDA[1] from the Water segment, and higher SG&A as a percentage of sales. The increase in SG&A was due primarily to higher professional fees associated with the integration of acquisitions and the cost savings initiatives announced by the Company on its fourth quarter 2016 results call.

Drainage Pipe & Products EBITDA[2] and Adjusted EBITDA[1] were $11.4 million and $12.8 million, respectively, compared to $27.9 million and $29.1 million in the prior year quarter, respectively.

The average sales prices of products in the Drainage segment declined due primarily to increased competition in the Houston, Texas market. Net sales and gross margin declined due to heavy rainfall in California combined with colder weather in the Northern and Midwest regions as compared to an unusually warm first quarter of 2016. Cost of goods sold increased due to higher labor, freight and raw materials costs and due to the start-up of a new precast plant that had lower cost absorption during the ramp in operations of the plant. The first quarter 2016 results do not include rent expense of approximately $3.8 million per quarter associated with the sale-leaseback transaction that closed in April 2016.

Water Pipe & Products EBITDA[2] and Adjusted EBITDA[1] increased to $17.1 million and $17.8 million, respectively, compared to $4.2 million for both metrics in the prior year quarter. The first quarter 2017 Water segment results included the benefit of the transformative April 2016 acquisition of U.S. Pipe. The ductile iron pipe portion of the Water segment was impacted by higher scrap prices that reduced gross margin for the quarter. The concrete and steel pressure pipe portion of the Water segment was also impacted by project delays that caused a decline in net sales and lower average selling prices.

*      *      *

**Long-term Margin Enhancement Plan Reaffirmed**

The Company continued work on its previously announced initiatives that are expected to drive a four hundred basis point increase in income from operations as a percentage of sales by 2019 as compared to full year 2016 results.  The Company invested in the retention of strategic consultants to assist with the development and implementation of an efficient plan to achieve margin expansion and cost reduction initiatives, including a national procurement plan, freight optimization and SG&A cost reductions. These collective initiatives are expected to contribute towards Forterra's ability to achieve its full year 2019 target of a 400 basis point expansion in income from operations as a percentage of sales as compared to full year 2016.  These initiatives are expected to require significant investment, including professional fees, most of which the Company believes are being incurred in the first half of 2017.  The Company expects some of the benefits to begin to contribute to improved performance starting in the second half of 2017.

**Second Quarter 2017 Financial Outlook**

While the Company does not anticipate providing an annual or quarterly guidance going forward, given the significant change to its expectations for the first half of 2017, additional perspective is being furnished at this time. The Company expects that net income for the second quarter of 2017 will range from $3.0 million to $10.0 million and adjusted EBITDA will range from $50.0 million to $60.0 million. The range reflects market factors that impacted the business in first quarter 2017 that are expected to continue to weigh on second quarter 2017. These include project delays in the concrete and steel pressure pipe product group and ongoing competitive pressures in Houston.  The Company also expects to incur higher costs of raw materials, freight and labor that will not be offset by recently implemented price increases until the second half of 2017. Finally, the Company expects costs associated with its growth and margin enhancing initiatives, ongoing integration activities and Sarbanes-Oxley Act compliance to result in lower year over year results in the first half of 2017. The Company does not expect these factors to materially impact results in the second half of 2017 as the Company benefits from announced price increases.

**CEO Commentary**

Forterra   CEO Jeff   Bradley commented,   "Our   financial   performance   is disappointing this quarter, but we do not believe it is representative of the long-term strength of our business and our competitive position in the industry.  Our earnings results for the quarter were impacted by a number of factors that unfortunately will persist through the second quarter of 2017. I continue to believe that the second half of the year will be in line with our previous expectations reflecting the benefit of announced price increases and sales that shifted from the first half of the year."

Mr. Bradley continued, "Following a year of significant acquisitions in 2016 and early 2017 that helped us to build the foundation of our business, we are focused on integration and execution of our initiatives that we expect will drive efficiency and transform the business. While this will require additional investment and time, we expect that the effort should result in sustained top-line growth, margin expansion and cost savings. We are fully committed to these initiatives."

35.     On May 15, 2017, the Company also held a conference call with investors to discuss the Company's results.  On the call, an analyst asked whether the Company would be "turning to positive organic growth here in the second quarter and through the rest of the year?" In response, Defendant Bradley stated:

I hate to keep repeating that we're going to get back on track the second half. We've talked a lot this morning. But really like to leave our comments at company is back on track in the second half of this year.

36.     On this news, the Company's stock price fell $4.79 per share, or 24.2%, to close at $14.93 per share on May 15, 2017, on unusually heavy trading volume.

37.     The above statements identified in ¶¶34-35 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose: (1) that the Company's initiatives were not producing organic growth; (2) that, as such, the Company was not likely to experience organic growth; (3) that the Company was experiencing increased pricing pressures, operational problems at is plants, and rising bad debt expenses; (4) that the Company had material weaknesses in internal controls over inventory accounting; (5) that, as a result of the foregoing, Defendants' statements about Forterra's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

**<u>Disclosures at the End of the Class Period</u>**

38.     On August 10, 2017, the Company again issued a press release disclosing that it produced no organic growth, this time for the second quarter of 2017.  Specifically, the Company stated that net sales for the quarter increased to $436.7 million, compared to $381.7 million in the prior year quarter, but that the sales growth was attributable to the impact of acquisitions that contributed $56.1 million to net sales.  The Company claimed that net sales were negatively impacted by Tropical Storm Cindy, excessive rainfall events around the country, unanticipated

competitive pricing pressure in certain areas, and a decline in average sales prices of products sold.  In greater part, the Company stated:

> IRVING, Texas, Aug. 10, 2017 (GLOBE NEWSWIRE) -- Forterra, Inc. ("Forterra" or the "Company") (NASDAQ:FRTA), a leading manufacturer of water and drainage infrastructure pipe and products in the United States and Eastern Canada, today announced results for the quarter ended June 30, 2017.

> **Second Quarter 2017 Results**
> Second quarter 2017 net sales increased to $436.7 million, compared to $381.7 million in the prior year quarter, driven mainly by acquisitions that contributed $56.1 million.  Net sales were negatively impacted by Tropical Storm Cindy, excessive rainfall events around the country and a decline in average sales prices of products sold.  Net income for the quarter was $(11.2) million, or $(0.18) per share, compared to net income of $36.7 million, or $0.70 per share, in the prior year quarter.  Adjusted net income[1] was $(1.3) million in the second quarter of 2017 compared to Adjusted net income[1] of $43.4 million in the prior year quarter.  Adjusted EBITDA[1] for the second quarter was $46.5 million compared to $74.0 million in the prior year quarter.

> Forterra CEO Jeff Bradley commented, "Our financial results this quarter were lower than we expected, reflecting the impact of weather, unanticipated competitive pricing pressure in certain areas and higher costs of goods sold.  We continue to aggressively pursue price increases and growth of higher margin products, and we have positive momentum on this front heading into the second half of 2017.  I remain enthusiastic about the longer term growth prospects for the Company."

> Drainage Pipe & Products ("Drainage") net sales increased to $221.5 million, compared to $192.2 million in the prior year quarter, due to $27.7 million of net sales from acquisitions.  Drainage gross profit was $43.1 million compared to $48.1 million in the prior year quarter, primarily due to a decline in average sales prices due to increased competition in certain regions as well as higher cost of goods sold.  Cost of goods sold increased due to higher labor costs in tight labor markets, freight and raw materials costs.  Second quarter 2017 Drainage EBITDA[2] and Adjusted EBITDA[1] were $40.1 million and $40.5 million, respectively, compared to $47.1 million and $48.3 million, respectively, in the prior year quarter.

> Water Pipe & Products ("Water") net sales increased to $215.2 million, compared to $189.2 million in the prior year quarter, due to the acquisition in the second quarter of 2016 of U.S. Pipe, which provided an additional $28.4 million of net sales.  Second quarter 2017 Water EBITDA[2] and Adjusted EBITDA[1] decreased to $17.9 million and $29.6 million, respectively, compared to $32.5 million and $41.7 million, respectively, in the prior year quarter, due to lower gross profit.  Water gross profit was $33.3 million compared to $35.2 million in the prior year quarter. The ductile iron pipe portion of the Water segment was impacted by lower average sales prices due to increased competition and higher

scrap prices that reduced gross margin for the quarter. In the concrete and steel pressure pipe portion of the Water segment, net sales increased modestly with higher sales in the U.S., partially offset by a decline in net sales in Canada. The higher U.S. concrete and steel pressure pipe net sales was driven by deliveries on a large project that had been delayed from the fourth quarter of 2016 and the first quarter of 2017. U.S. concrete and steel pressure pipe gross profit declined due primarily to lower average sales prices. In Canada, the higher sales and gross margin from concrete and steel pressure pipe in the prior year quarter were driven primarily by a large multi-year project that was completed in the fourth quarter of 2016.

Second quarter 2017 results were impacted by higher SG&A costs. The increase in SG&A was due primarily to higher professional fees associated with the previously announced cost savings initiatives and Sarbanes-Oxley compliance work. Bradley explained, "We have invested significantly in cost-cutting initiatives, integration of acquisitions and SOX compliance, and I expect that these costs will be substantially behind us as we head into 2018."
Bradley continued, "While our outlook for the third quarter of 2017 reflects a more challenging market environment than we had previously expected, I am confident that we are taking the right steps to improve our top line growth, lower our costs and increase our operating efficiency. We have made significant progress on our cost-cutting initiatives that I expect will materially lower our costs in 2018 and beyond."

**Completion of Sale of U.S. Concrete and Steel Pressure Pipe Assets**
The Company closed its previously announced sale of its U.S. concrete and steel pressure pipe assets on July 31, 2017 and used proceeds of $23.2 million to partially pay down the balance outstanding on its $300 million asset-based revolving credit facility (the "Revolver"). The transaction, which allowed Forterra to exit a business with unfavorable market dynamics in the U.S., is expected to be immediately accretive to Forterra's earnings, margins and cash flows. Forterra also acquired assets relating to a Drainage facility in Conroe, Texas as a part of the transaction, which will bolster Forterra's position in the large and growing Houston Drainage market. The assets sold contributed EBITDA[2] and Adjusted EBITDA[1] of $(8.6) million and $(1.1) million, respectively, on net sales of $34.2 million in Q2 2017, compared to EBITDA[2] and Adjusted EBITDA[1] of $7.3 million and $1.3 million, respectively, on net sales of $23.1 million in Q2 2016. For the six months ended June 30, 2017 and June 30, 2016 and full year 2016, the assets sold generated EBITDA[2] of $(13.9) million, $9.2 million, and $4.8 million, respectively, and Adjusted EBITDA[1] of $(6.6) million, $3.3 million, and $1.4 million, respectively, on net sales of $61.9 million, $53.1 million, and $99.7 million, respectively.

**Balance Sheet and Liquidity**
At June 30, 2017, the Company had cash of $22.0 million and total borrowings under its credit agreements of $1.32 billion. Availability under the Revolver as of June 30, 2017 was $204.3 million. Including the benefit of the net proceeds from the sale of the U.S. concrete and steel pressure pipe business and anticipated

positive cash flows from working capital in the second half of 2017, Forterra expects to end the year with no borrowings outstanding under the Revolver while maintaining a cash surplus heading into the seasonal increase in working capital in Q1 2018.  The Company anticipates that maintenance capital expenditures will be approximately 2.5% of net sales for 2017 with no major growth capital expenditures planned through the end of 2017.  Since June 30, 2017, including the application of proceeds from U.S. concrete and steel pressure pipe assets, the Company has repaid $55.0 million on the Revolver, and the outstanding balance on the Revolver was $25.0 million on August 9, 2017.

**Financial Outlook**

The Company expects that the average sales prices in both segments in the third quarter of 2017 will be similar to the averages in the third quarter of 2016.  However, the Company expects higher costs, including labor, freight and raw materials costs in the Drainage segment and scrap costs in the Water segment, will negatively impact margins as compared to the same period in the prior year.  The Company also expects that the earnings contribution of the Canadian concrete and steel pressure pipe portion of the Water segment in the third quarter of 2017 will be negatively impacted by lower anticipated net sales as compared to the third quarter of 2016, consistent with the year over year trend from the second quarter of 2016 to the second quarter of 2017.  The Company expects that costs in the Corporate segment in the third quarter of 2017 will be in line with costs in the first quarter of 2017, reflecting lower professional fees as compared to the second quarter of 2017.  The Company expects that net income for the third quarter of 2017 will range from $1.0 million to $7.0 million and Adjusted EBITDA[1] will range from $55.0 million to $65.0 million.  The Company anticipates that the factors influencing expectations for the third quarter of 2017 will also impact results in the fourth quarter of 2017.  The Company expects that EBITDA and Adjusted EBITDA margins in the third quarter of 2017 will be lower than the third quarter of 2016 levels, which were 16.5% and 18.2%, respectively.  The Company will reevaluate whether or not to provide guidance beyond the third quarter of 2017 prior to reporting results for the third quarter of 2017 and will continue to reevaluate on an ongoing basis.  The decision to provide guidance for the third quarter of 2017 was based on the significantly lower expectations for the Company for the third quarter of 2017 and the balance of the year.

Given the lower expectations for the balance of 2017, the Company is reassessing the timetable to achieve the previously announced target of a 400 basis point increase in income from operations, EBITDA and Adjusted EBITDA as a percentage of sales as compared to full-year 2016.  While the Company expects to see the benefit of its initiatives in 2018 and beyond and believes that there are further opportunities to reduce its costs and increase margins, the increased market uncertainty, as reflected in the lower expectations for full year 2017, reduces the Company's visibility to achieving the previously communicated margin expansion by 2019.

**Asset Impairment**

As of June 30, 2017, the Company determined that the assets and liabilities associated with its now-sold U.S. concrete and steel pressure pipe assets met the criteria required to be classified as held for sale, and therefore are carried at fair value less selling costs.  An analysis indicated that the carrying value of the long-lived assets held for sale exceeded the fair value less costs to sell, and as a result, a pre-tax impairment charge of $7.5 million was recorded within impairment and exit charges for the three and six month periods ended June 30, 2017.

During the second quarter of 2017, the Company performed interim goodwill impairment testing of the Canadian concrete and steel pressure pipe reporting unit after identifying indicators it was more-likely-than-not that the reporting unit's carrying value was in excess of its fair value.  As a result of the interim impairment testing, the Company determined that the carrying value of the reporting unit's goodwill was fully impaired and a goodwill impairment charge of $3.0 million was recorded.

39.      On this news, the Company's stock price fell approximately 55%, on August 10, 2017, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

40.      Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, that: a) acquired Forterra common stock issued pursuant and/or traceable to the Company's false and/or misleading IPO Registration Statement issued in connection with Forterra's IPO, seeking to pursue remedies under the Securities Act; and/or, b) acquired Forterra's securities during the Class Period, against the Defendants, seeking to pursue remedies under the Exchange Act.

41.      The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Forterra's common stock actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Forterra shares were traded publicly during the Class Period on the NASDAQ.  As of May 12, 2017, Forterra had 64,138,900 shares of common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Forterra or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that

customarily used in securities class actions.

42.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

44.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Forterra; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

45.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

46.     The market for Forterra's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Forterra's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Forterra's securities relying upon the integrity of the market price of the Company's securities and market

information relating to Forterra, and have been damaged thereby.

47.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Forterra's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Forterra's business, operations, and prospects as alleged herein.

48.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Forterra's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## **LOSS CAUSATION**

49.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

50.     During the Class Period, Plaintiff and the Class purchased Forterra's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

51.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Forterra, their control over, and/or receipt and/or modification of Forterra's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Forterra, participated in the fraudulent scheme alleged herein.

### APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

52.     The market for Forterra's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Forterra's securities traded at artificially inflated prices during the Class Period.  On December 27, 2016, the Company's stock price closed at a Class Period high of $22.40 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Forterra's securities and market information relating to Forterra, and have been damaged thereby.

53.     During the Class Period, the artificial inflation of Forterra's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Forterra's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Forterra and its business, operations, and prospects, thus causing the price of the Company's securities to be

artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

54.     At all relevant times, the market for Forterra's securities was an efficient market for the following reasons, among others:

(a)     Forterra stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Forterra filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Forterra regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Forterra was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

55.     As a result of the foregoing, the market for Forterra's securities promptly digested current information regarding Forterra from all publicly available sources and reflected such information in Forterra's stock price. Under these circumstances, all purchasers of Forterra's securities during the Class Period suffered similar injury through their purchase of Forterra's securities at artificially inflated prices and a presumption of reliance applies.

56.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial

prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

57.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Forterra who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 11 of The Securities Act
### (Against All Defendants)

58.    Plaintiff repeats and realleges each and every allegation contained above, except any allegation of fraud, recklessness or intentional misconduct.

59.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

60.    The IPO Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

61.     Forterra is the registrant for the IPO.  The Defendants named herein were responsible for the contents and dissemination of the IPO Registration Statement.

62.     As issuer of the shares, Forterra is strictly liable to Plaintiff and the Class for the misstatements and omissions.

63.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the IPO Registration Statement were true and without omissions of any material facts and were not misleading.

64.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

65.     Plaintiff acquired Forterra shares pursuant and/or traceable to the IPO Registration Statement.

66.     Plaintiff and the Class have sustained damages.  The value of Forterra common stock has declined substantially subsequent to, and due to, Defendants' violations.

**SECOND CLAIM**
**Violation of Section 15 of The Securities Act**
**(Against the Individual Defendants)**

67.     Plaintiff repeats and realleges each and every allegation contained above, except any allegation of fraud, recklessness or intentional misconduct.

68.     This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

69.     Individual Defendants, by virtue of their offices, directorship and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Forterra within the meaning of Section 15 of the Securities Act.  The Individual Defendants had the power and influence and exercised the same to cause Forterra to engage in the acts described herein.

70.     Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

71.     By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

**THIRD CLAIM**
**Violation of Section 10(b) of The Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

72.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

73.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Forterra's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

74.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Forterra's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

75.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Forterra's financial well-being and prospects, as specified herein.

76.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Forterra's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Forterra and its business

operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

77.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

78.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Forterra's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

79.     As a result of the dissemination of the materially false and/or misleading

information and/or failure to disclose material facts, as set forth above, the market price of Forterra's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Forterra's securities during the Class Period at artificially high prices and were damaged thereby.

80.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Forterra was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Forterra securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

81.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

82.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**FOURTH CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

83.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

84.     Individual Defendants acted as controlling persons of Forterra within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's

operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

85.      In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

86.      As set forth above, Forterra and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)      Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)      Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated:  August 16, 2017                    **GLANCY PRONGAY & MURRAY LLP**


By:   *s/ Lesley F. Portnoy*
Lesley F. Portnoy (LP-1941)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
lportnoy@glancylaw.com

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff*

## SWORN CERTIFICATION OF PLAINTIFF

Forterra, Inc., SECURITIES LITIGATION

I, Supanin Disayawathana, certify:

1. I have reviewed the complaint and authorized its filing.

2. I did not purchase Forterra, Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Forterra, Inc., during the class period set forth in the Complaint are as follows:

    See Attached Transactions

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

    ___ Check here if you are a current employee or former employee of the defendant Company.

    I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: __05 | 19 | 17__

_____
(Please Sign Your Name Above)

[REDACTED]

**Supanin Disayawathana's Transactions in Forterra, Inc. (FRTA)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 04/25/2017 | Bought | 799 | $18.6500 |
| 05/02/2017 | Sold | -799 | $19.4900 |
| 05/03/2017 | Bought | 787 | $19.6900 |
| 05/05/2017 | Sold | -787 | $20.1900 |
| 05/08/2017 | Bought | 782 | $19.8100 |